JOHN WASHINGTON, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. A verdict should be certain, positive and free from all ambiguity. It must be so certain that the court can give judgment upon it.

2. The verdict should be regarded from the standpoint of the jury's intention, and when this can be ascertained, if consistent with legal principles, such effect should be allowed to their findings as will most nearly conform to their verdict. If the verdict is not sufficiently certain to clearly show what the jury intended, it will be fatally defective.

3. A verdict, "we the jury find the defendant guilty of aggravated assault with intent to murder, so say we all," is uncertain, ambiguous and fatally defective.

4. There is no necessity for a defective verdict to be received or recorded. If the jury bring in a defective verdict, it is in the power equally of the court, the prisoner and the prosecuting attorney to have it set right before the discharge of the jury. If the verdict is ambiguous or uncertain, the judge should cause the jury to correct it before discharging them.

This case was decided by Division B.

Writ of Error to the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*W. C. Hodges,* for plaintiff in error;

*W. H. Ellis,* Attorney General, for the state.

PARKHILL, J.—The plaintiff in error, John Washington, who will be called the defendant, was indicted for an assault upon one Mathew Williams, with a deadly weapon, a pistol, from a premeditated design to effect the death of the said Williams. The verdict of the jury was as follows: "We the jury find the defendant guilty of aggravated assault with intent to murder, so say we all." The defendant was sentenced to the state prison for two years.

Under the errors assigned, it is contended that the

verdict found the defendant guilty of no offense known to the laws of Florida, it found the defendant guilty of two substantive offenses, "aggravated assault" and "assault to murder" and no sentence could properly be passed upon such verdict.

A verdict should be certain, positive and free from all ambiguity and obscurity.   Bryant v. State, 34 Fla. 291, 16 South. Rep. 177; Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410; 89 Am. St. Rep. 237; Long v. State, 42 Fla. 612, 28 South. Rep. 855; Grant v. State, 33 Fla. 291, 14 South. Rep. 757.

The verdict should be regarded from the standpoint of the jury's intention, and when this can be ascertained if consistent with legal principles, such effect should be allowed to their findings as will most nearly conform to their intent.   If the verdict is not sufficiently certain to clearly show what the jury intended, it will be fatally defective.   Clark's Crim. Proc. 485; 29 Am. & Eng. Ency. Law, (2nd ed.) 1023.

The test of the sufficiency of a verdict is stated to be this:   Is it so certain that the court can give judgment upon it?   See 29 Am. & Eng. Ency. Law (2nd ed.) 1025.

The verdict before us finds the defendant guilty of aggravated assault with intent to murder.   Under our statute, the term aggravated assault is given a definite and peculiar meaning of its own.   Aggravated assault is a well known criminal offense under our statute. "Whoever assaults another with a deadly weapon, not having a premeditated design to effect the death of the person assaulted, shall be deemed guilty of an aggravated assault."   Section 3228, General Statutes of 1906.

In Lindsey v. State, 53 Fla. 56, 43 South. Rep. 87, we said:   "In a prosecution for aggravated assault, an assault with a deadly weapon must be alleged and proven; but the intent with which the assault was made, whether

to wound or injure, or whether the assault was made with any particular intent, is immaterial, unless the intent should amount to an intent to kill or a premeditated design to effect death, in which case the assaulting party would be guilty of an assault with intent to commit manslaughter or murder."

It will be noted that the jury, by this verdict, found the defendant guilty of an aggravated assault, (that is, an assault with a dangerous weapon without an intent to murder), with an intent to murder. A verdict that finds the assault to have been committed with and without an intent to murder is contradictory, uncertain and ambiguous.

This verdict, taken in its technical, literal sense, convicts the defendant of no offense known to the law or charged in the indictment. From it we cannot ascertain the intention of the jury. How the jury arrived at this verdict it is difficult to say. It is likely that the jury misunderstood the instructions of the court, and became confused as to the different grades of assaults included in the offense charged in the indictment. The charge, being one of assault with intent to murder, the jury were authorized, under the allegations of the indictment and in view of the evidence, to find the defendant guilty of aggravated assault. Perhaps the jury was trying to make this finding by the use of the peculiar language employed.

The offense of aggravated assault is made a misdemeanor by our statute, and is punishable by fine and imprisonment in the county jail. The offense of assault with intent to murder is a felony under our statute, and is punishable by imprisonment in the state prison. As the defendant was sentenced to the state prison for two years, it is clear that the trial court understood or construed the verdict to convict the defendant of a felony—an assault with intent to murder. It may be contended that the verdict finds

the defendant guilty of an assault with intent to murder, and the word "aggravated" may be treated as surplusage. But we cannot treat the word "aggravated" as surplusage, or superfluous matter, for it has substance in it, and cannot be rejected without injury to the defendant, for *non constat,* that without it the jury would not have found the defendant guilty of assault with intent to murder.

The word "aggravated" qualifies the word "assault," just as much as the words "with intent to murder" qualify the term "aggravated assault." Under our statute, aggravated assault is a crime, and assault with intent to murder is a crime. The verdict seems clearly to find the defendant guilty of "aggravated assault"—aggravated assault with intent to murder, whatever that may mean. It may be contended that the jury used the word "aggravated" in a popular sense, intending thereby to find the defendant guilty of an aggravated case of assault with intent to murder. We might say that the evidence does not sustain this idea, and the trial judge imposed a sentence of only two years, when the statute authorized him to make it twenty years. Perhaps the jury tried to make a case of aggravated assault out of it —an assault with a deadly weapon, without an intent to murder.

It may be contended that the jury intended by the words "aggravated assault" to mean an assault with a deadly weapon, and thereby intending, by the verdict, to find the defendant guilty of an assault with a deadly weapon with intent to murder. But the jury could only know the statutory meaning of "aggravated assault." All that the jury knew about aggravated assault was what the court told them about it, and the court could only tell them that these words mean an assault with a deadly weapon, *without an intent to murder.* Can we say that the jury intended to incorporate in this verdict

only a part of the meaning of the words, to-wit, an assault with a deadly weapon, and not include the other part of the definition, to-wit, without an intent to murder? If the jury intended to find the defendant guilty of assault with intent to murder, they could have so found, without employing the word "aggravated." But all this is conjecture, in the face of the express finding that the defendant was guilty of *aggravated assault,* and the only meaning of that term known to the law, to-wit, an assault without intent to murder.

In this matter we ought not to depend upon conjecture. When the court comes to pronounce sentence there ought to be no uncertainties about the offense of which the prisoner is guilty. Mr. Bishop says: "As already intimated, there ought never to be a defect in the verdict. If the jury bring in a defective verdict, it is in the power equally of the prisoner and the prosecuting attorney to have it set right; and, suppose the prisoner chooses not to interfere and suffers a defective verdict to be entered, as his interest would always prompt him to do, in preference to a verdict of guilty in due form, he, by thus failing to interpose, waives his objection to be put a second time in jeopardy for the same offense. In all such cases, therefore, the verdict is simply set aside as a nullity, and a new trial is ordered. The court cannot, instead of this, make the verdict, or the judgment, what it thinks it ought to be." 1 Bishop's Cr. Proc. § 1016.

The verdict is uncertain, repugnant and ambiguous. The judgment is, therefore, reversed, and a new trial ordered.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL, J., concur in the opinion.

WHITFIELD, J., dissents.